**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Sleep Number Corporation,

Plaintiff,

v.

Steven Jay Young; Carl Hewitt; UDP Labs, Inc., a Delaware Corporation,

Defendants.

Court File No. 20-cv-1507-NEB-ECW

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(3), AND 12(b)(6), OR ALTERNATIVELY TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
BACKGROUND ..... 3
A. Messrs. Young and Hewitt Work For SleepIQ LABS, A Separate Subsidiary Of Sleep Number Corporation Located In San Jose, California. ..... 3
B. Messrs. Young and Hewitt Negotiate Their Transition To Leave SleepIQ LABS To Work On Their Own Project. ..... 4
C. Messrs. Young and Hewitt Start UDP Labs. ..... 5
D. Messrs. Young and Hewitt Terminate Their Consulting Agreements. ..... 6
ARGUMENT ..... 6
A. Sleep Number Has Not—And Cannot—Establish Personal Jurisdiction Over Defendants. ..... 6
1. None of the Defendants is "at home" in Minnesota. ..... 7
2. Sleep Number fails to establish specific jurisdiction. ..... 8
i. Steven Young and Carl Hewitt ..... 9
ii. UDP Labs ..... 12
B. Venue Is Improper in the District of Minnesota. ..... 14
1. The "substantial part of the events or omissions giving rise to the claim[s] occurred" in Minnesota.. ..... 14
2. Alternatively, this case should be transferred to the Northern District of California. ..... 16
C. The Complaint's Pleading Deficiencies Warrant Dismissal. ..... 20
1. Declaratory judgment as to ownership of the Inventions-at-Issue is not ripe, nor would it finally resolve the dispute. ..... 21
2. Sleep Number's contract claim does not give fair notice of what confidential information was alleged to be used. ..... 24
3. Sleep Number's conversion claim is preempted. ..... 26
4. The Complaint fails to identify the trade secrets at issue "with sufficient particularity." ..... 27
5. The tortious interference claim fails because Sleep Number cannot allege that UDP Labs acted in bad faith. ..... 30
CONCLUSION ..... 31

**INTRODUCTION**

Defendants Steven Young, Carl Hewitt, and UDP Labs, Inc. respectfully request an Order dismissing Plaintiff Sleep Number Corporation's ("Sleep Number") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), or alternatively transferring this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a), on the following three bases:

*First*, Sleep Number cannot establish personal jurisdiction over Defendants. Sleep Number hales three California residents into this Court, based on events that occurred in California, asserting claims that arose *exclusively* in California, while seeking to apply Delaware law. Under Eighth Circuit law, the few connections to Minnesota that Sleep Number alleges are random, fortuitous, or attenuated. They are insufficient to maintain jurisdiction. Sleep Number has not—and cannot—show that litigating this case in Minnesota comports with traditional notions of fair play and substantial justice. Accordingly, this action should be dismissed pursuant to Rule 12(b)(2).

*Second*, this case does not properly belong in the District of Minnesota. Defendants are all California residents. Messrs. Young's and Hewitt's company, UDP Labs, is a small seven-person startup company with its sole office located in California. It has no employees or consultants in Minnesota, nor does it conduct any business in Minnesota. Conversely, Sleep Number is a nation-wide manufacturer and retailer with stores and operations in California. Nearly all of Sleep Number's allegations concern events that took place in the Northern District of California and relate to its California-based subsidiary, SleepIQ Labs. Relevant documents, evidence, and witnesses—

particularly non-party witnesses—are located in California as well. Because this action does not properly belong in the District of Minnesota, it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3). Alternatively, it should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

*Third*, Sleep Number fails to plead its claims. *First*, a recurring problem with Sleep Number's Complaint is that although it alleges that Defendants took and used Sleep Number's proprietary information and trade secrets, the Complaint nowhere identifies what that information is to fairly give Defendants notice of the claims asserted against them. These deficiencies warrant dismissal of Sleep Number's trade secret misappropriation claims (Counts 4 and 5), and partial dismissal of its breach of contract claim (Count 2). *Second*, Sleep Number's declaratory judgment claim (Counts 1 and 7) fails because it is neither ripe, nor can an order on this claim finally and conclusively resolve the underlying controversy. Sleep Number seeks a declaration of ownership of patent applications, whose claims are currently not known and may change during prosecution. *Third*, Sleep Number's conversion claim (Count 3) is preempted by its trade secret misappropriation claims. And *fourth*, the tortious interference claim (Count 6) fails because Sleep Number has not—and cannot—allege that UDP Labs acted in bad faith, as required under Delaware law. These pleading deficiencies independently merit dismissal under Rule 12(b)(6).

For these and the reasons further discussed below, Defendants respectfully request an Order from the Court granting its Motion to Dismiss or, in the Alternative, to Transfer

Venue. Because Sleep Number's deficiencies cannot be cured by any amendment, Defendants respectfully request the dismissal be made with prejudice.

## BACKGROUND

### A. Messrs. Young and Hewitt Work For SleepIQ LABS, A Separate Subsidiary Of Sleep Number Corporation Located In San Jose, California.

In 2005, Mr. Young founded BAM Labs, Inc. ("BAM Labs"), a company located in California's Silicon Valley. Declaration of Steven Young ("Young Decl.") ¶3.[1] Mr. Young served as BAM Labs' CEO and CTO. *Id.* Mr. Hewitt worked for BAM Labs as its Vice President of Engineering. Declaration of Carl Hewitt ("Hewitt Decl.") ¶3. Both Messrs. Young and Hewitt are residents of California and own no property in Minnesota. Young Decl. ¶2; Hewitt Decl. ¶2.

In 2012, Sleep Number approached BAM Labs to form a partnership and integrate SleepIQ technology into Sleep Number's beds. Young Decl. ¶4; Dkt. No. 1 ("Compl.") ¶26. Sleep Number later acquired BAM Labs and renamed it SleepIQ LABS. Young Decl. ¶5; Hewitt Decl. ¶3.

SleepIQ LABS is a separate subsidiary of Sleep Number. Compl. ¶ 26. It operates out of BAM Labs' old offices in San Jose, California. Young Decl. ¶5; Hewitt Decl. ¶3. Messrs. Young and Hewitt became SleepIQ LABS' CTO and Vice President of Engineering, respectively. Young Decl. ¶6; Hewitt Decl. ¶4. They worked out of SleepIQ LABS' San Jose office. Young Decl. ¶7; Hewitt Decl. ¶5.

[1] The Court may consider affidavits and evidence in support of jurisdictional and venue facts. *CH Robinson Worldwide, Inc. v. House of Thaller, Inc.*, No. 19-CV-2292 (NEB/TNL), 2020 WL 1442856, at *3 (D. Minn. Mar. 24, 2020); *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 883 (D. Minn. 2015).

Annie Bloomquist, Sleep Number's Chief Product Officer, periodically traveled to San Jose to visit SleepIQ LABS approximately once every other month. Young Decl. ¶8; Hewitt Decl. ¶6. Messrs. Young and Hewitt met with Ms. Bloomquist on these occasions, and would discuss work matters with her, either in SleepIQ LABS' office, or offsite at a nearby restaurant in San Jose. Young Decl. ¶8; Hewitt Decl. ¶6. For instance, Messrs. Young and Hewitt met with Ms. Bloomquist on October 4, 2018 for a work dinner. *See* Compl. ¶ 45. That dinner meeting occurred at a restaurant in San Jose. Young Decl. ¶9; Hewitt Decl. ¶7. They also met again on November 16, 2018 at Ms. Bloomquist's request. *See* Compl. ¶ 54. That meeting also occurred at a restaurant in San Jose. Young Decl. ¶10; Hewitt Decl. ¶8.

**B. Messrs. Young and Hewitt Negotiate Their Transition To Leave SleepIQ LABS To Work On Their Own Project.**

On or about November 8, 2017, Messrs. Young and Hewitt informed Sleep Number that they intended leave SleepIQ LABS and pursue their own venture. Young Decl. ¶12; Hewitt Decl. ¶10. In response, Sleep Number expressed concern that their departure would disrupt operations at SleepIQ LABS. Young Decl. ¶413; Hewitt Decl. ¶11. Sleep Number requested that Messrs. Young and Hewitt remain as consultants for SleepIQ LABS to facilitate the transition in personnel and activities at SleepIQ LABS. Young Decl. ¶14; Hewitt Decl. ¶12. They agreed to do so. Young Decl. ¶ 14; Hewitt Decl. ¶ 12.

On or about December 4, 2017, Messrs. Young and Hewitt entered into Consulting Agreements with Sleep Number. Young Decl. ¶15 & Ex. A; Hewitt Decl.

¶13 & Ex. A. The purpose of the Consulting Agreements was to allow Messrs. Young and Hewitt to gradually transition themselves out of SleepIQ LABS, and to help minimize disruptions to SleepIQ LABS during that time, while also allowing them to pursue their new start-up idea, UDP Labs. Young Decl. ¶15; Hewitt Decl. ¶13. The Consulting Agreements allowed them to perform work for UDP Labs outside specific, enumerated areas. Young Decl., Ex. A at §1(E); Hewitt Decl., Ex. A at §1(E).

**C. Messrs. Young and Hewitt Start UDP Labs.**

In January 2018, Messrs. Young and Hewitt founded their new venture, UDP Labs, headquartered in Los Gatos, California. Young Decl. ¶18; Hewitt Decl. ¶16. UDP Labs makes medical device technologies. Young Decl. ¶19; Hewitt Decl. ¶17. Mr. Young is the Chief Executive Officer. Young Decl. ¶1. Mr. Hewitt is the Chief Technology Officer. Hewitt Decl. ¶1.

UDP Labs is a Delaware corporation, with its only and principal place of business located in Los Gatos, California. Young Decl. ¶18; Hewitt Decl. ¶16. Its seven employees, its consultants, and its investors are all located in California. Young Decl. ¶19; Hewitt Decl. ¶17. UDP Labs has never sold any products or services to any persons or businesses in Minnesota. Young Decl. ¶20. Nor has it ever solicited the services of any person or business in Minnesota. *Id.* It has no registered agent for service in Minnesota, and has never filed any papers with the Minnesota Secretary of State. *Id.* UDP Labs has never registered, filed, or paid any taxes in Minnesota. *Id.*

**D. Messrs. Young and Hewitt Terminate Their Consulting Agreements.**

On November 1, 2018, Messrs. Young and Hewitt informed Sleep Number that they were terminating their Consulting Agreements. Young Decl. ¶21; Hewitt Decl. ¶20. The Consulting Agreements terminated effective November 15, 2018. Young Decl. ¶21; Hewitt Decl. ¶20.

## ARGUMENT

Sleep Number's Complaint warrants dismissal. *First*, Sleep Number has not—and cannot—establish personal jurisdiction over the Defendants. *Second*, venue is improper in the District of Minnesota because the parties, witnesses, facts, and injury occurred in California, not in Minnesota. In the alternative, Defendants request that this action be transferred to the Northern District of California. *Third*, Sleep Number's Complaint suffers from pleading defects fatal to several of its claims.

**A. Sleep Number Has Not—And Cannot—Establish Personal Jurisdiction Over Defendants.**

Sleep Number hales three California residents into this Court based on events that occurred in California, asserting claims that arose *exclusively* in California, while seeking to apply Delaware law.[2] Sleep Number cannot show that litigating this case here comports with traditional notions of fair play and substantial justice.

Because Minnesota's long-arm statute runs coextensively with the federal Constitution, *see* Minn. Stat. § 543.19, the jurisdictional inquiry over non-residents asks:

[2] Defendants respectfully reserve all objections and defenses to the applicability of Delaware law to this action. However for purposes of this Motion only, Defendants will discuss Sleep Number's claims under Delaware law.

does the exercise of jurisdiction satisfy the Due Process Clause of the United States Constitution? *See Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994); *Fredin Bros., Inc. v. Kyle Anderson & Jason Reed*, No. 19-CV-1679 (NEB/HB), 2019 WL 7037674, at *2 (D. Minn. Dec. 20, 2019) (dismissing case "because the contacts between the Defendants and Minnesota are insufficient to comport with due process").

Personal jurisdiction arises in two contexts: general and specific. *Viasystems, Inc. v. BMPapst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011). In both, Sleep Number carries the burden to prove by a preponderance of the evidence that due process requirements for personal jurisdiction over *each* Defendant are met. *Dakota Indus. v. Dakota Sportswear*, 946 F. 2d 1384, 1387 (8th Cir. 1991).

**1. None of the Defendants is "at home" in Minnesota.**

Sleep Number cannot plausibly argue that this Court has general jurisdiction over Defendants. A plaintiff asserting general jurisdiction must show that each defendant's contacts with the state were so "continuous and systematic" such that it is "essentially at home" in Minnesota. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Johnson v. Woodcock*, 444 F. 3d 953, 956 (8th Cir. 2006).

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *CH Robinson Worldwide*, 2020 WL 1442856, at *4 (citing *Goodyear*, 564 U.S. at 524). Messrs. Young and Hewitt are California residents. At most, Sleep Number alleges that they worked for SleepIQ LABS and consulted for Sleep Number "for years." Compl. ¶9. But SleepIQ LABS is located in California. Young

Decl. ¶5. Their work took place in California. *Id.* ¶7; Hewitt Decl. ¶5. These allegations cannot form the basis for general jurisdiction in Minnesota.

Likewise, "[t]he 'paradigm all-purpose forums' where a corporation is amenable to general jurisdiction are its place of incorporation and its principal place of business." *CH Robinson Worldwide*, 2020 WL 1442856, at *4 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). UDP Labs is a Delaware company with its principal place of business in Los Gatos, California. Additionally, the Complaint alleges no facts supporting "continuous and systematic" contacts with Minnesota. Accordingly, general jurisdiction is lacking for UDP Labs.

**2. Sleep Number fails to establish specific jurisdiction.**

Sleep Number cannot show that Defendants' connections with Minnesota are so substantial as to make jurisdiction over them comport with traditional notions of fair play and substantial justice. A plaintiff asserting specific jurisdiction must show sufficient minimum contacts to satisfy due process, such that the defendant should reasonably anticipate being haled into court here. *Digi-Tel Holdings, Inc. v. Pro-teq Telecom. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "*It is essential in each case* that there is some act by which the 'defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (emphasis added).

The Eighth Circuit applies a five-factor test to evaluate whether a non-resident defendant's minimum contacts meet federal due process requirements: "(1) the quantity of contacts with the forum (here, Minnesota); (2) the nature and quality of the defendant's contacts with Minnesota; (3) the relation of the cause of action to the defendant's contacts; (4) Minnesota's interest in providing a forum; and (5) the convenience of the parties." *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 654 (8th Cir. 1982). "The first three factors are of primary importance, while the last two factors are considered secondary." *Viracon, Inc. v. J & L Curtain Wall LLC*, 929 F. Supp. 2d 878, 883 (D. Minn. 2013) (citing *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)). The few contacts that Sleep Number identifies are "random, fortuitous, or attenuated" and cannot form the basis of specific jurisdiction over Defendants.

**i. Steven Young and Carl Hewitt**

Sleep Number argues that this Court has jurisdiction over Messrs. Young and Hewitt based on three allegations: (i) they made three work trips to Minnesota; (ii) they contracted with Sleep Number, a Minnesota corporation; and (iii) because Sleep Number is located in Minnesota, the injury occurred in Minnesota. *See* Compl. ¶9. Sleep Number's allegations fail to establish jurisdiction.

*First*, Sleep Number is correct that Messrs. Young and Hewitt traveled to Minnesota for work in November 2017 and October 2018.[3] However, they did so to

[3] Sleep Number also alleges a third trip in which Messrs. Young and Hewitt "returned to Minnesota to attend a product roadmap meeting in or around February 2018." Compl.

terminate their relationships with SleepIQ LABS and Sleep Number. In November 2017, they traveled to Minnesota to meet with Ms. Bloomquist to terminate their Employment Agreements with SleepIQ LABS. Young Decl. ¶¶12–14; Hewitt Decl. ¶¶10–12. In October 2018, they again traveled to Minnesota to meet with Ms. Bloomquist to terminate their Consulting Agreements with Sleep Number. Compl. ¶48. Here, two meetings in Minnesota to end working relationships are insufficient to constitute "purposeful availment" of the "privilege of conducting activities" in the state of Minnesota. *See, e.g.*, *Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 525 (8th Cir. 1992) (defendant's two-day trip to Minnesota "too few in number and too attenuated from the cause of action to support jurisdiction"); *see also Pangaea, Inc. v. Flying Burrito, LLC*, 647 F.3d 741 (8th Cir. 2011) (rejecting defendant's visit to forum state as sufficient to confer jurisdiction); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 225 (8th Cir. 1987) (same). These visits are far too minimal, and the nature and quality of those contacts with Minnesota are far too slight, to support jurisdiction.

*Second*, Sleep Number asserts that Messrs. Young and Hewitt are subject to suit in Minnesota because they entered into the Consulting Agreements with Sleep Number. First, Messrs. Young and Hewitt negotiated, and entered into, those agreements in California. Young Decl. ¶16; Hewitt Decl. ¶14. Second, it is also not the law. "Merely entering into a contract with a forum resident does not provide the requisite contacts between a defendant and the forum state. This is particularly true when all elements of

---

¶9. This is incorrect. They attended that meeting telephonically, from California. They did not travel to Minnesota. *See* Young Decl. ¶11 & Ex. B; Hewitt Decl. ¶9 & Ex. B.

the defendant's performance are to take place outside of the forum." *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303–04 (8th Cir. 1979)). Indeed, if just contracting with a resident of the forum state were sufficient, then feasibly *every* contract for employment or services would trigger personal jurisdiction over the out-of-state party. The Eighth Circuit has foreclosed that argument. *See, e.g.*, *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 43 (8th Cir. 1988) (citing *Iowa Elec.*, 603 F.2d at 1303). And moreover, all of Messrs. Hewitt and Young's work took place in California, not Minnesota.

Sleep Number's *third* and final assertion suggests that because it is located in Minnesota, the injury is necessarily felt in Minnesota, therefore giving rise to personal jurisdiction. This assertion is also incorrect, as any alleged confidential information or trade secrets pertained to SleepIQ LABS, located in California. But here too, the Eighth Circuit has considered Sleep Number's argument, and rejected it. The jurisdictional inquiry must focus on *Defendants'* contacts with Minnesota, not *Sleep Number's*. "We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. . . . 'Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.'" *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 822–23 (8th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277 (2014)). Sleep Number's plaintiff-focused basis for asserting jurisdiction is unsupported in law.

**ii. UDP Labs**

Sleep Number's jurisdictional deficiency is even more pronounced for UDP Labs. Its sole office is in Los Gatos, California. It does all its business from there, and its employees all work there. UDP Labs has never sent sales representatives into Minnesota. It has never registered in Minnesota as a foreign corporation. It has never owned or operated any property in Minnesota. It has never filed any Minnesota corporate income tax returns or information returns for the Minnesota Secretary of State. It does no business in Minnesota whatsoever.

Nevertheless, Sleep Number argues that this Court has jurisdiction over UDP Labs based on two assertions: (i) Messrs. Young and Hewitt, who founded UDP Labs, contracted with Sleep Number; and (ii) UDP Labs allegedly maintains "a highly interactive website" accessible to residents of Minnesota. *See* Compl. ¶ 10. Neither is sufficient to support personal jurisdiction.

*First*, Sleep Number is incorrect to impute the actions of Messrs. Young and Hewitt to UDP Labs. This argument fails for two reasons. First, as explained above, Messrs. Young's and Hewitt's contacts with Sleep Number cannot form the basis for personal jurisdiction. Second, Defendants are unaware of any authority supporting the proposition that Minnesota's long-arm statute confers vicarious personal jurisdiction over a non-resident corporate defendant based solely on a non-resident officer's contacts with a Minnesota plaintiff. *See, e.g.*, *Stratasys, Inc. v. ProtoPulsion, Inc.*, No. A10-2257, 2011 WL 2750720, at *8 (Minn. Ct. App. July 18, 2011) ("Minnesota has not applied the principle of vicarious personal jurisdiction to establish personal jurisdiction over a

dominant individual shareholder who is the alleged alter ego of a corporation"). But even accepting Sleep Number's theory, it nowhere alleges that Mr. Young or Mr. Hewitt were acting in any capacity on behalf of UDP Labs for purposes of the claims it brings against UDP Labs. *See generally* Compl. ¶¶10, 69–75.

*Second*, UDP Labs' website is *passive*, not "highly interactive." A cursory examination shows this. *See* Declaration of Rachel M. Walsh ("Walsh Decl.") ¶2 & Ex. A. The website displays no products and offers nothing for sale. It contains no advertisements about UDP Labs' services or any particulars about the technology it is developing. Instead, UDP Labs' website lists only its advisors and employees, and its business address in Los Gatos. UDP Labs' website contains none of the hallmarks of an "highly interactive website." The Eighth Circuit is clear: passive websites like these, cannot confer jurisdiction. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710–11 (8th Cir. 2003) ("A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction."). That it has nation-wide reach based solely by being on the internet constitutes "fortuitous" and "attenuated" contacts with a forum state insufficient to establish specific personal jurisdiction. *Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co.*, 872 F. Supp. 2d 838, 849 (D. Minn. 2012) ("The website itself is insufficient to confer jurisdiction over [defendant]. It is a passive website, through which consumers cannot make orders. The only interaction consumers can have through the website is that they may click on a link to email [defendant]."). The nature and quality of UDP Labs' contacts with Minnesota is incidental, non-substantive, and fortuitous.

Defendants respectfully request that its motion to dismiss for lack of jurisdiction be granted. Because these deficiencies cannot be cured by any amendment, Defendants respectfully request the dismissal be made with prejudice.

**B. Venue Is Improper in the District of Minnesota.**

This matter should additionally be dismissed because the District of Minnesota is not the proper venue to bring this action. The substantial nexus of facts, claims, witnesses, and litigants occurred in California, not Minnesota. Dismissal pursuant to Rule 12(b)(3) or, alternatively, transfer to the Northern District of California, is warranted.

**1. The "substantial part of the events or omissions giving rise to the claim[s] occurred" in Minnesota.**

28 U.S.C. § 1391(b) controls venue in federal courts:

> A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013).

Here, all Defendants reside in California. And discussed above, *supra* Section A(2), Sleep Number cannot meet its burden to establish personal jurisdiction over Defendants. Venue under either §§ 1391(b)(1) or (b)(3) is unavailable.

This leaves § 1391(b)(2). The Eighth Circuit explains that when analyzing a "substantial part of the events or omissions" for purposes of venue, a court must look to the relevant wrongful activities of the defendant, not the activities of the plaintiff or the lawful conduct of either party. *Woodke v. Dahm*, 70 F.3d 983, 985–86 (8th Cir. 1995); *see also Transocean Grp. Holdings Pty Ltd. v. S. Dakota Soybean Processors, LLC*, 505 F. Supp. 2d 573, 578–79 (D. Minn. 2007) (same).

The events that give rise to Sleep Number's claims took place in California, not Minnesota. The Consulting Agreements were negotiated from, and executed in, California. Those agreements governed Messrs. Young's and Hewitt's activities with SleepIQ LABS, Sleep Number's California-based subsidiary. The Inventions-at-Issue,[4] which Sleep Number asserts belong to it, were developed, prepared, and filed in California. Sleep Number's allegations against UDP Labs occurred only in California. In brief, this action arises *exclusively* from activities in California.

Sleep Number suggests that venue lies in the District of Minnesota because the contracts involved Sleep Number, and the action allegedly pertains to its intellectual property. *See* Compl. ¶ 11. But as explained above, the Eighth Circuit in *Woodke* has

[4] Defined in the Complaint as, collectively, U.S. Provisional Patent Application Nos. 62/742,613 (the "'613 Application") and 62/804,623 (the "'623 Application"), and U.S. Patent Application Publication Nos. 2020/0110194 (the "'848 Application") and 2020/0163627 (the "'385 Application"). *See* Compl. ¶76.

rejected this plaintiff-centric analysis of venue. 70 F.3d at 985–86. The focus must be on *Defendants'* alleged wrongful activities, not *Sleep Number's*. Accordingly, "a substantial part of the events or omissions giving rise to the claim occurred" in California, not Minnesota.

Because this case does not fall within any of the § 1391(b) categories, venue in the District of Minnesota is not proper. *Atl. Marine Const.*, 571 U.S. at 56. Defendants respectfully request an Order dismissing this action pursuant to Rule 12(b)(3).

**2. Alternatively, this case should be transferred to the Northern District of California.**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The Eighth Circuit considers three factors: (i) the convenience of the parties, (ii) the convenience of the witnesses, and (iii) the interests of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). All weigh in favor of transfer.

First, this case could have been brought in the Northern District of California, as it has jurisdiction and proper venue over all parties. All parties are subject to jurisdiction in California, as all Defendants reside there, and the majority of events that gave rise to this action took place there. Sleep Number is subject to jurisdiction in California as well, as its subsidiary, SleepIQ Labs, is located there, and it has availed itself of the California courts. *See, e.g.*, *Sleep Number Corp. v. Sizewise Rentals, L.L.C.*, Case No. 18-cv-356-

DDP(SPx) (C.D. Cal. Feb. 20, 2018); *Sleep Number Corp. v. Am. Nat'l Mfg., Inc.*, Case No. 18-cv-357-AB(SPx) (C.D. Cal. Feb. 20, 2018). Venue is proper in the Northern District of California too because, among other things, UDP Labs is headquartered, and Messrs. Young and Hewitt reside, in the Northern District. *See* 28 U.S.C. § 1391(b)(1). SleepIQ LABS is also headquartered in the Northern District. Indeed Sleep Number acknowledges that its "work on [] SleepIQ® technology occurs mainly at Sleep Number's SleepIQ LABS, which is located in California." *See* ECF 16 (Declaration of Annie Bloomquist) ¶6.

Second, the convenience of the parties favors transfer, as all parties have operations in California. Messrs. Young and Hewitt both live near San Jose, California. Their company, UDP Labs, is a small seven-person start-up company located in Los Gatos, California. This action concerns Defendants' activities at SleepIQ LABS, in San Jose. In contrast, Sleep Number is a nation-wide manufacturer and retailer. It operates 611 retail stores nationwide, including 72 in California. Walsh Decl. Ex. B at 18. Last year, it made $1.05 billion in profits. *Id.* at 27. Any minor inconvenience to Sleep Number from not litigating in its chosen forum is outweighed by the convenience of Northern California to all parties.

The convenience of the witnesses and location of relevant documents and evidence also favor transfer. Witnesses—particularly non-party witnesses—are located here. *Valspar Corp. v. Kronos Worldwide, Inc.*, 50 F. Supp. 3d 1152, 1156 (D. Minn. 2014) ("The convenience-of-witnesses factor generally is regarded as the most important in the inquiry."). The Complaint mentions Messrs. Eric Hewitt, UDP Labs' Chief

Software Architect, and Omid Sayadi, a named inventor on the Inventions-at-Issue and UDP Labs' Chief Data Scientist. *See* Compl. ¶¶60–62; 65–66. Both are in California. *See* Young Decl. ¶19; ECF 39 (Declaration of Eric Hewitt) ¶1; ECF 42 (Declaration of Omid Sayadi) ¶1. The other named inventors on the Inventions-at-Issue, Messrs. Jonathan Olson, Alan Luckow, and Robert Dobkin, are all located in California. Current and former SleepIQ LABS employees who may have relevant information are also located in California, including the following non-party witnesses:

- Guillaume Oget: Formerly Vice President of Engineering at SleepIQ LABS. Mr. Oget is likely to have knowledge regarding the circumstances surrounding Messrs. Young and Hewitt's departure, and the departures of other employees now at UDP Labs. He also has knowledge related to the work done by Messrs. Hewitt and Young. Mr. Oget works in Sunnyvale, California. Walsh Decl. ¶4 & Ex. C.

- Ramazan Demirli: Formerly Senior Director of Research and Development at SleepIQ LABS. Mr. Demirli is likely to have knowledge regarding Sleep Number's work on load cells and other technology. He works in San Francisco. Walsh Decl. ¶5 & Ex. D.

- Sanjay Mahadi: Formerly Vice President of Cloud Engineering at SleepIQ LABS. Mr. Mahadi is likely to have knowledge regarding Sleep Number's cloud infrastructure. He works in Los Gatos. Walsh Decl. ¶6 & Ex. E.

- Markus Wallgren: Formerly Chief Technologist at SleepIQ LABS. Mr. Wallgren is likely to have knowledge regarding Sleep Number's work on sensors. He now works in San Carlos, California. Walsh Decl. ¶ 7 & Ex. F.

Relevant documents and electronic devices are located in California as well, as Sleep Number has requested to image a number of electronic devices belonging to UDP Labs employees. *See* ECF 13.

The interests of justice favor transfer also. Courts analyzing this factor consider "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l*, 119 F.3d at 696. Each of these considerations favors Defendants, or is neutral.

Judicial economy favors California. On average, cases brought in the Northern District of California are terminated approximately six months earlier than those brought in this Court. *See* Walsh Decl. ¶ 8 & Ex. G. Transfer at this stage in the case would not result in duplicative efforts by the Northern District of California, because this litigation is still in the early proceedings.

Sleep Number's decision to file this action in this Court is not entitled to deference. Where, as here, "'the underlying events giving rise to the litigation did not occur in the forum, courts afford a plaintiff's choice of forum significantly less deference.'" *Oien v. Thompson*, 824 F. Supp. 2d 898, 905 (D. Minn. 2010) (quoting *CBS Interactive*, 259 F.R.D. at 408).

It would be significantly less costly to litigate in the Northern District of California, as opposed to the District of Minnesota, because, as discussed above, the majority of witnesses and sources of proof are located in California.

Sleep Number is unable to enforce a judgment in Minnesota, because Defendants do not have property, offices, or assets in California. This factor favors transfer.

The activities alleged in Sleep Number's complaint occurred in California, so

there is a significant interest in having this local controversy decided in California. In addition, "California has a strong interest in protecting the freedom of movement of persons whom California-based employers . . . [.]" *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 900–01 (1998); *see also* Cal. Bus. & Prof. Code § 16600.

The issue of conflicts of laws is at most neutral. Sleep Number brings its claims under Delaware law. Defendants reserve the right to contend that these claims are governed by California law. Importantly, however, Sleep Number has identified no issues specific to Minnesota law, and either court is able to resolve these issues of conflicts of law.

On balance, the interests-of-justice factors favor transfer, and Defendants motion to transfer should be granted.

**C. The Complaint's Pleading Deficiencies Warrant Dismissal.**

The Court need not reach Defendants' Rule 12(b)(6) defenses if it decides to dismiss or transfer based on jurisdiction or venue. The Complaint, however, is independently subject to dismissal. *First*, Sleep Number's declaratory judgment claim (Count 1 and 7) is neither ripe, nor would it finally resolve the dispute. *Second*, Sleep Number's contract claim (Count 2) does not fairly give notice to Defendants as to what confidential information is at issue. *Third*, the conversion claim (Count 3) is preempted. *Fourth*, the trade secret claims (Counts 4 and 5) fail to identify "with sufficient particularity" the trade secrets at issue. And *fifth*, Sleep Number's tortious interference claim (Count 6) fails because it cannot allege that UDP Labs acted in bad faith.

**1. Declaratory judgment as to ownership of the Inventions-at-Issue is not ripe, nor would it finally resolve the dispute.**

Sleep Number's first claim seeks a declaratory judgment of ownership of the Inventions-at-Issue. This claim fails as a matter of law for two reasons: (i) *first*, no justiciable controversy yet exists because the dispute is not ripe for review; and (ii) *second*, a declaratory judgment will not finally resolve the controversy. Sleep Number's claim for specific performance (Count 7) relies on its first claim, and so fails for the same reasons.

*First*, Sleep Number's declaratory judgment claim is unripe. The Declaratory Judgment Act provides that, "[i]n a case of *actual controversy* within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). "The existence of an actual controversy *is an absolute predicate* for declaratory judgment jurisdiction." *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 481 (Fed. Cir. 1996).

In the context of patent ownership, "the existence of issued patent claims, presently enforceable against [the declaratory judgment plaintiff], are a requisite to litigation of a declaratory judgment action." *Id.* (citation omitted); *see also DeFerranti v. Lyndmark*, 30 App. D.C. 417, 425 (D.C. Cir. 1908) ("[I]n a patent, no vested right of which the applicant cannot be deprived is acquired under the preliminary proceedings leading up to its issuance."); *Superior Indus., L.L.C. v. Thor Glob. Enterprises Ltd.*, No.

CIV. 10-2524 MJD LIB, 2011 WL 601217, at *1 (D. Minn. Feb. 11, 2011) (claim fails under Rule 12(b)(6) where "action is premature because the PTO has yet to determine the metes and bounds of [the] patent application").

Sleep Number's declaratory judgment claim is unripe because no patent *claims* have issued. Sleep Number's allegations rely on the premise that any inventions covered in the Inventions-at-Issue are not subject to the exclusions in Mr. Hewitt and Mr. Young's Consulting Agreements. The scope of those inventions, however, is not yet known. Only patent *applications* have been filed, seeking the possible issuance of an enforceable patent at a later date. The '613 Application and the '623 Application are *provisional applications*, for which a patent can never issue. No patents have issued from the '848 Application and the '385 Application, so no claim over the ownership of the possible future patent—and whether Sleep Number is actually entitled to assignment—has yet ripened for this Court's review. *See, e.g.*, *Muskegon Piston Ring Co. v. Olsen*, 307 F.2d 85, 89 (6th Cir. 1962) (If there is no issued patent, "no controversy under the patent laws exists, upon which [the accused infringer] can bring an action for declaratory judgment."). Sleep Number's declaratory judgment claim therefore seeks an impermissible advisory opinion. *GAF Bldg. Materials Corp.*, 90 F.3d at 482 (in declaratory judgment claim alleging dispute "of a possible future patent not then in existence," district court "did not know with certainty whether a patent would issue or, if so, what legal rights it would confer upon [the declaratory judgment plaintiff], and "[t]hus, the dispute was purely hypothetical and called for an impermissible advisory opinion").

*Second*, the declaratory judgment claim fails because any decision cannot accord finality to the controversy, because not all inventors listed on the patent applications are joined in this action, nor are they alleged to have assigned their respective interests to UDP Labs. "[A] litigant may not use a declaratory-judgment action to obtain piecemeal adjudication of defenses that *would not finally and conclusively resolve* the underlying controversy." *MedImmune*, 549 U.S. at 127 (citing *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998) (emphasis in original).

Sleep Number asserts ownership over the Inventions-at-Issue. It alleges that Messrs. Young and Hewitt, as named inventors on the patent applications, assigned their rights to the Inventions-at-Issue to UDP Labs. Compl. ¶114. The applications identify other inventors in addition to Messrs. Young and Hewitt that include Messrs. Jonathan Olson, Alan Luckow, Robert Dobkin, and Omid Sayadi. *See id.* Exs. 1–4. Sleep Number has not joined the other named inventors in this lawsuit. Nor does Sleep Number allege that all right in the pending patent applications vests entirely in UDP Labs.

Nevertheless, the Complaint seeks an order from the Court that "Sleep Number is the rightful and sole owner of the Inventions-at-Issue." *Id.* ¶113. As a result, any court order would not "settl[e] the entire controversy" because it does not adjudicate the rights of all parties who may assert rightful ownership interests in the Inventions-at-Issue. *Sears, Roebuck & Co.*, 372 F.2d at 438. At this stage, any merits determination of ownership of the Inventions-at-Issue "would not finally and conclusively resolve the underlying controversy." *MedImmune*, 549 U.S. at 127. Sleep Number's declaratory

judgment claim, and its claim for specific performance that relies on it, should be dismissed.

**2. Sleep Number's contract claim does not give fair notice of what confidential information was alleged to be used.**

Sleep Number's second claim for breach of contract against Messrs. Young and Hewitt should be dismissed in part, to the extent it alleges breach of Section 5 of the Consulting Agreements pertaining to Confidential Information. Defendants do not have "fair notice" of the claim "and the grounds on which it rests" because the Complaint fails to describe what confidential information was allegedly used or disclosed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Sleep Number's contract claim relating to Confidential Information fails to meet the Rule 8 notice requirement. A complaint must give a defendant "fair notice" of what the "claim is and the grounds on which it rests." *Id.* (citing Fed. R. Civ. P. 8(a)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684–85 (2009). Rule 8 embodies the notice requirement that a plaintiff must allege sufficient facts so that a defendant may understand the nature of the claim brought against it. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. This includes allegations of facts showing that it is at least plausible that a cause of action can be sustained. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will fail under Rule 8. *Mehta v. Angell Energy, LLC*, No. 19-CV-2631 (MJD/DTS), 2020 WL 1893208, at *3 (D. Minn. Apr. 1, 2020), *report and recommendation adopted*, No.

19-CV-2631 (MJD/DTS), 2020 WL 1891765 (D. Minn. Apr. 16, 2020) (citing *Iqbal*, 556 U.S. at 678).

Messrs. Young and Hewitt are unable to adequately defend themselves against this portion of Sleep Number's contract claim because the Complaint does not fairly give notice of what confidential information was allegedly taken. The Complaint recites *verbatim* Section 5(a) of the Consulting Agreement, which broadly defines "Confidential Information," as "without limitation technical data, trade secrets, know-how, research, product plans, [Sleep Number's] products or services and markets therefor, customer lists, customer data, customers, software, developments, inventions, discoveries, ideas, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other business information . . ." Compl. ¶ 34; *see also id.* ¶ 124 ("On information and belief, Young and/or Hewitt have used or retained some of Sleep Number's Confidential Information after the termination of the Consulting Agreements, including testing data, schematics, source code, and other confidential documents."); *id.* ¶ 48 ("Sleep Number's Confidential Information covered more than just the code that had been written to date and included any ideas, specialized know-how, processes, product plans, etc.").

This amounts to *any* information located within Sleep Number. Messrs. Young and Hewitt cannot properly respond to such open-ended and unintelligible definitions of information that are described as "any ideas," "technology," or "specialized know-how." *Schlief v. Nu-Source, Inc.*, No. CIV. 10-4477 DWF/SER, 2011 WL 1560672, at *4 (D. Minn. Apr. 25, 2011) (dismissing plaintiff's claim for breach of confidentiality provision

for failure to plead facts identifying confidential information at issue). Moreover, Sleep Number's allegations as to Defendants' breach rest on assertions made "on information and belief." *See, e.g.*, Compl. ¶¶ 124, 125, 129. Courts in this District have held this kind of pleading insufficient to state a claim. *See, e.g.*, *Vandevender v. Sass*, No. CV 18-607 (DWF/LIB), 2018 WL 6330417, at *3 n.2 (D. Minn. Dec. 4, 2018), *aff'd*, No. 19-1230, 2020 WL 4374977 (8th Cir. July 31, 2020) ("Pleading 'on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim.'" (quoting *Kampschroer v. Anoka Cty.*, 57 F. Supp. 3d 1124, 1143 (D. Minn. 2014), *aff'd*, 840 F.3d 961 (8th Cir. 2016)). Accordingly, Defendants respectfully request the Court dismiss Sleep Number's contract claim, to the extent it alleges breach of Section 5 of the Consulting Agreement.[5]

**3. Sleep Number's conversion claim is preempted.**

Sleep Number's conversion claim fails because it is preempted by its Delaware trade secret claim. The Delaware Uniform Trade Secrets Act ("DUTSA") displaces "conflicting tort, restitutionary, or other [state] laws . . . providing civil remedies for misappropriation of[a] trade secret." 6 Del. C. § 2001 *et seq*. "[T]he DUTSA preserves a single tort cause of action under state law for misappropriation of trade secrets and 'eliminate[s] other tort causes of action founded on allegations of trade secret

[5] To the extent Sleep Number's contract claim alleges breach of Confidential Information prior to December 1, 2017 (the effective date of the Consulting Agreements), the claim must be dismissed. Such allegations pre-date the Consulting Agreements, and are instead governed by the contract arising under Messrs. Young's and Hewitt's Employment Agreements. Sleep Number sues under the Consulting Agreements only.

misappropriation.'" *Overdrive, Inc. v. Baker & Taylor, Inc.*, No. CIV.A. 5835-CC, 2011 WL 2448209, at *4 (Del. Ch. June 17, 2011) (citation omitted).

Sleep Number's conversion claim is co-extensive with its trade-secret claim. It alleges that it owns confidential information, that Defendants Young, Hewitt, and UDP Labs have interfered with Sleep Number's interest in that confidential information, and that Sleep Number was injured as a result. Compl. ¶¶ 138–42. But these same allegations already form the basis for Sleep Number's DUTSA claim. *Id.* ¶¶ 154–59. Sleep Number attempts to repackage a statutory claim addressing one alleged wrong as a common-law tort addressing the same alleged wrong. DUTSA prohibits this kind of repeat pleading. *Alarm.com Holdings, Inc. v. ABS Capital Partners Inc.*, No. CV 2017-0583-JTL, 2018 WL 3006118, at *11 (Del. Ch. June 15, 2018), *aff'd*, 204 A.3d 113 (2019) (dismissing plaintiff's common law claim as preempted by DUTSA because it rests on the same factual nexus as its trade secret misappropriation claim).[6] Sleep Number's conversion claim is preempted and should be dismissed.

**4. The Complaint fails to identify the trade secrets at issue "with sufficient particularity."**

Sleep Number brings two trade secret misappropriation claims based on the federal DTSA and Delaware DUTSA. Both suffer from the same fatal defect. Sleep

[6] DUTSA preempts common-law claims, even if the trade secret claim ultimately fails. *Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, No. CV N15C-06-245 CEB, 2017 WL 1842899, at *15 (Del. Super. Ct. Apr. 20, 2017) ("Delaware has joined the 'majority view' that section 7 of DUTSA precludes common law claims based on misappropriation of business information even in cases in which the claim does not meet the statutory definition of 'trade secret' under the Code.").

Number nowhere identifies what alleged trade-secret information was taken or used by Defendants to fairly give notice of the claim.

"[U]nder DTSA or DUTSA, a plaintiff must identify a trade secret *with sufficient particularity* so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *Progressive Sterilization, LLC v. Turbett Surgical LLC*, No. CV 19-627-CFC, 2020 WL 1849709, at *6 (D. Del. Apr. 13, 2020) (citation and internal quotation marks omitted) (emphasis added). Because Sleep Number fails to plead "with sufficient particularity" what its trade secrets allegedly are, its trade secret claims must be dismissed.

Sleep Number's Complaint is devoid of facts identifying the alleged trade secrets. Instead, it recites (*verbatim*) the statutory definition of "trade secret":

> The information used by Defendants to design and develop their technologies comprises technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, or photographically.

Compl. ¶¶ 146; 154 (incorporating same).[7] As with the contract claim, here, Defendants cannot fairly defend themselves against such vague and open-ended descriptions of Sleep

[7] *Compare* 18 U.S.C. § 1839 (DTSA defining "trade secret" as follows: ". . . technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically . . .").

Number's alleged trade secrets. Sleep Number goes no further than copying the statutory definitions of the term itself.

Delaware district courts applying Delaware law have regularly dismissed DTSA and DUTSA claims where the pleadings used similarly broad and vague definitions of alleged trade secrets.[8] *See, e.g.*, *Power Integrations, Inc. v. Silanna Semiconductor N. Am., Inc.*, No. CV 19-1292-LPS, 2020 WL 3508078, at *3 (D. Del. June 29, 2020) (dismissing trade secret claim because plaintiff's "complaint recite[d] broad categories of information," such that the "open-ended and seemingly boundless definition does not provide fair notice of the scope of Plaintiff's trade secret misappropriation claim"); *Savor, Inc. v. FMR Corp.*, No. CIV.A. 00C-10-149JRS, 2004 WL 1965869, at *7 (Del. Super. Ct. July 15, 2004) ("[Plaintiff] has managed through much of the litigation to skirt the question of whether it, in fact, possesses a trade secret by describing its alleged secret with elastic terms and phrases that track, in large part, the statutory definition of 'trade secret' but do little meaningfully to explain how [plaintiff's] program works . . . ."); *see also Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009) (dismissing trade secret claim, and explaining: "[Plaintiff's] descriptions of its trade secrets and "Confidential Information" are insufficient to inform

---

[8] District court cases applying state law are instructive here because "[i]t is well-accepted that the DTSA is in general comport with state trade secret law. While the DTSA largely conforms with state trade secret laws, the House and the Senate committees did not intend to alter the balance of current trade secret law or alter specific court decisions on misappropriation. Thus, existing state law on trade secrets informs the Court's application of the DTSA." *Corp. Claims Mgmt. v. Shaiper (In re Patriot Nat'l Inc.)*, 592 B.R. 560, 577 (Bankr. D. Del. 2018) (internal citations omitted).

[defendant] of the basic fact of what exactly it is supposed to have stolen or unlawfully obtained").

Sleep Number's Complaint suffers from an even greater deficiency than in *Power Integrations*, *Savor*, and *Medafor* because it provides Defendants with no guidance at all as to the nature of the alleged trade secrets. Sleep Number fails to sufficiently plead a violation of the DTSA and DUTSA. Its trade secret misappropriation claims should be dismissed.

**5. The tortious interference claim fails because Sleep Number cannot allege that UDP Labs acted in bad faith.**

Lastly, Sleep Number's tortious interference with contract claim against UDP Labs fails to allege that UDP Labs acted in bad faith as required under Delaware law. A plaintiff asserting a claim for tortious interference with a contract must allege: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987). Tortious interference claims against a corporate defendant must also allege that it was acting maliciously or in bad faith, and not merely "pursuing in good faith [] legitimate profit seeking activities." *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 591 (Del. Ch. 1994).

Sleep Number has not, and cannot, allege that UDP Labs acted maliciously or in bad faith. The Complaint alleges that Messrs. Young and Hewitt were previously consultants of Sleep Number. Compl. ¶28. In late 2018, Young and Hewitt gave notice

to Sleep Number that they intended to terminate their consulting relationships to work on a separate venture. *Id.* ¶49. The Complaint alleges that Messrs. Young and Hewitt took some unspecified confidential information or trade secret from Sleep Number. *Id.* ¶¶34, 146, 154. They later formed UDP Labs. *Id.* ¶30. UDP Labs filed patent applications that Sleep Number claims it owns. *Id.* ¶111. On these bases alone, Sleep Number alleges that UDP Labs tortuously interfered with contracts between Messrs. Young and Hewitt, and Sleep Number.

Under Delaware law, this is insufficient to state a tortious interference claim. Sleep Number nowhere alleges that UDP Labs acted maliciously to frustrate the contractual relationship, and not merely to carry on commercial activity in the ordinary course of business. *See generally* Compl. ¶¶ 60–68; *see also id.* ¶¶ 69–75. Instead, Sleep Number rests this claim solely on UDP Labs' relationship with Messrs. Young and Hewitt. *Id.* As such, it fails to allege the requisites of a tortious interference claim under Delaware law. *Shearin*, 652 A.2d at 591. The claim should likewise be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court GRANT its Motion dismissing Sleep Number's Complaint.

Dated: August 12, 2020

By: */s/ Rachel M. Walsh*

Neel Chatterjee (*pro hac vice*)
*nchatterjee@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, California 94063
(650) 752-3100

Rachel M. Walsh (*pro hac vice*)
*rwalsh@goodwinlaw.com*
James Lin (*pro hac vice*)
*jlin@goodwinlaw.com*
**GOODWIN PROCTER LLP**
3 Embarcadero Center
San Francisco, California 94111
(415) 733-6000

David L. Hashmall, #138162
*dhashmall@felhaber.com*
Lauren M. Weber, #0396567
*lweber@felhaber.com*
Brandon J. Wheeler, #0396336
*bwheeler@felhaber.com*
**FELHABER LARSON**
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
(612) 339-6321

**ATTORNEYS FOR DEFENDANTS STEVEN YOUNG, CARL HEWITT, AND UDP LABS, INC.**