UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sleep Number Corporation,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Steven Jay Young; Carl Hewitt; and<br>UDP Labs, Inc.,<br><br>　　　　　　　Defendants. | Case No. 20-cv-1507 (NEB/ECW)<br><br>**ORDER** |

This matter is before the Court on Defendants' Motion to Compel (Dkt. 326) and Defendants' Motion to Compel (Dkt. 347). Turning to the merits of the Motions, rather than summarize this action's extensive procedural history, the Court focuses on the relief requested and provides background only as necessary. For the reasons set forth below, the Motions are granted in part and denied in part.

## I.　　DEFENDANTS' MOTION TO COMPEL (DKT. 326)

Pursuant to Rule 612 of the Federal Rules of Evidence, Defendants Steven Jay Young, Carl Hewitt, and UDP Labs, Inc. (collectively, "UDP" or "Defendants") move the Court for an order to compel Plaintiff Sleep Number Corporation ("Sleep Number" or Plaintiff) to produce or identify the documents and communications that refreshed Annie Bloomquist's ("Bloomquist") memory in preparation for her deposition, and make Bloomquist available to Defendants for a second deposition for cross-examination regarding these documents. (*See* Dkt. 326.)

1

A.      **Procedural Background**

On December 20, 2020, Defendants took the deposition of Bloomquist, Sleep Number's Chief Innovation Officer. (Dkt. 336 at 1.)[1] As part of her deposition preparation, Sleep Number's counsel represented as follows:

> I, along with other members of Sleep Number's litigation team, reviewed, highlighted, and compiled a binder of documents for Ms. Bloomquist. Ms. Bloomquist and I then reviewed the binder together, in-person. This binder included a small number of privileged emails between Ms. Bloomquist and Sleep Number's in-house counsel.

(Dkt. 342 ¶ 6.) Bloomquist asserted in her declaration that while Young and Hewitt were consultants at Sleep Number and even after their consultancy ended, she had various meetings with them, including dinner meetings, and that before and after some of those meetings, she emailed with Sleep Number's in-house lawyers for the purpose of expressing her concerns about Young and Hewitt, to seek legal advice regarding her concerns, and to provide information so that in-house lawyers could provide legal advice to Sleep Number. (Dkt. 368 ¶ 2.)

During her deposition, Bloomquist testified that among other documents, she had reviewed e-mails she had sent to counsel outlining what happened at her various meetings with Young and Hewitt to prepare for her deposition, but when asked as to whether they had refreshed her recollection as to what happened, Bloomquist testified as follows:

---

[1] With respect to any deposition testimony from Bloomquist, the page number referred in this Order references the page number of the rough transcript. Otherwise, the page number citations to the record in this Order correspond to the document's CMECF page numbers.

Q. Did any of them refresh your recollection as to what happened?

A. Not dramatically for today, no.

Q. What about, we had an earlier deposition scheduled that we didn't proceed with, what about for that day?

MS. PATTON: Object to the form.

THE WITNESS: I would say that I was prepared for the meeting with a working session and there were files that I reviewed that reminded me of key points that happened in the last couple years.

BY MR. CHATTERJEE:
Q. What were -- let me ask. What were those documents that reminded you of key points. And I am focused specifically on the e-mails that you have talked about?

A. I focused on the complaint, reading it end to end, I focused on the interrogatories, reading those end to end, and I focused on a series of e-mails, there were many of them over the years, I can't specifically call one out but we reviewed a stack about five inches high.

Q. And did those include e-mails to your counsel?

A. Yes.

Q. And did those refresh your recollection about events in this case?

A. Yes.

Q. How many of those e-mails were there?

A. I would have to estimate. I have no idea off top of my head. Any where from five to -- I be honestly V [sic] have no idea.

Q. And for those e-mails, was there a stack prepared for you or did you prepare them?

A. The external counsel prepared the book that was of all of the material from the last four or five years.

Q. Are there any particular e-mails that you sent to counsel that refresh your

>recollection as to facts in this case that you can recall?
>
>MS. PATTON: Object to the form.
>
>THE WITNESS: I believe I have already answered that, I went through many e-mails that refreshed my memory as to the history of the detail.
>
>BY MR. CHATTERJEE:
>Q. My questions are, are there any in particular that you remember reviewing?
>
>A. Not particularly.

(Dkt. 336 at 30, 38-40.)

Defendants requested that Sleep Number produce or identify all materials that Bloomquist reviewed in preparation for her testimony. (Dkt. 335 ¶ 3.) Sleep Number refused to produce any of this information, taking the position that the documents or communications that Bloomquist reviewed in preparation for her deposition are privileged. (*Id.*)

**B.      Legal Standard**

Rule 612 of the Federal Rules of Evidence provides in relevant part as follows:

>(a) Scope. This rule gives an adverse party certain options when a witness uses a writing to refresh memory:
>
>>(1) while testifying; or
>>
>>(2) before testifying, if the court decides that justice requires the party to have those options.
>>
>>(b) Adverse Party's Options; Deleting Unrelated Matter. Unless 18 U.S.C. § 3500 provides otherwise in a criminal case, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony.

Fed. R. Evid. 612.

"The purpose of the rule is . . . to promote the search of credibility and memory." *Id.*, advisory committee note (1972). "The Rule applies to depositions through Federal Rule of Civil Procedure 30(c)(1)." *U.S. Bank Nat'l Ass'n v. Equity Bank*, No. CV 12-2023 (PAM/JJG), 2014 WL 12601036, at *2 (D. Minn. May 7, 2014) (citing *Sauer v. Burlington N. R.R. Co.*, 169 F.R.D. 120, 123 n.2 (D. Minn. 1996)). Rule 612 by its very language requires that "'a party meet three conditions before it may obtain documents used by a witness prior to testifying: 1) the witness must use the writing to refresh his memory; 2) the witness must use the writing for the purpose of testifying; and 3) the court must determine that production is necessary in the interests of justice.'" *Napolitano v. Omaha Airport Auth.*, No. 8:08CV299, 2009 WL 1740826, at *3 (D. Neb. June 15, 2009) (quoting *Sporck v. Peil*, 759 F.2d 312, 317 (3rd Cir. 1985)). "'[J]ustice requires' disclosure when there is 'some evidence that a witness actually relied upon documents in giving his testimony or that those documents somehow influenced his testimony.'" *Vuz v. DCSS III, Inc.*, No. 20-CV-0246-GPC-AGS, 2022 WL 542883, at *1 (S.D. Cal. Feb. 23, 2022) (quoting *T & S Enters., L.L.C. v. Sumitomo Corp. of Am.*, No. 11CV1318-GPC MDD, 2012 WL 4845544, at *1 (S.D. Cal. Oct. 10, 2012)) (citations omitted). However, the Eighth Circuit has held that "Rule 612 is not a vehicle for a plenary search for contradictory or rebutting evidence." *United States v. Sheffield*, 55 F.3d 341, 343 (8th Cir. 1995). "[T]he burden is on the party requesting production to show that the document actually influenced the witness's testimony." *Napolitano*, 2009 WL 1740826,

at *3 (marks and citation omitted).

"Even if the document consulted is privileged, the Court has discretionary power to determine whether a waiver has occurred." *CMS Wireless, LLC v. Fid. & Deposit Co. of Maryland*, No. 4:11CV00755 RTD, 2013 WL 12286172, at *4 (E.D. Ark. Mar. 11, 2013) (citing Fed. R. Evid. 612; McCormick on Evid. § 93 (6th ed.)).  That said, as part of Rule 612's enactment, the Advisory Committee cautioned that "nothing" in Rule 612 should "be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory." Fed. R. Evid. 612 advisory committee note (1974).

**C.     Analysis**

Defendants argue that the evidence before the Court is that Bloomquist testified that she used her emails to legal counsel regarding her meetings with Defendants to refresh her memory for the purposes of testifying at her deposition. (Dkt. 333 at 6.) With respect to the "interests of justice" element, Defendants argue that the emails from Bloomquist to legal counsel are important because (1) she oversaw Hewitt and Young's work at Sleep Number; (2) her communications with Defendants involved what Sleep Number intellectual property Defendants had access to, and discussions about what Defendants' new technology was, which is relevant to each party's exposure to the other's trade secrets; (3) she testified at her deposition regarding what Hewitt and Young communicated to her during their 2018 meetings; (4) she called into question the veracity of Young's own sworn testimony and Defendants' sworn discovery responses; and (5) she communicated with counsel frequently, including about her meetings with Young and Hewitt in 2018. (*Id.* at 7-8.) Defendants went on to argue as follows:

6

> However, these select documents—which likely contain important information about the substance and timing of communications about trade secrets between the Parties—have not been made available to Defendants. Thus, justice requires that Sleep Number identify or disclose all such documents. Disclosure is warranted where, as here, Ms. Bloomquist testified that she was "completely transparent" with counsel about her communications with Defendants, and used those communications to remind her of the details for purposes of preparing for her deposition, but at times during her deposition could not recall details she would have conveyed to counsel. *See id.*, Ex. A at 40:1–12.

(*Id.* at 8.)

As starting point, while Bloomquist testified to reviewing her emails to counsel among others in a five-inch stack binder of documents, the foundation laid as to whether the emails to counsel refreshed her recollection is inconclusive and contradictory. There are assertions that the emails did not dramatically refresh her recollection and claims that she did not remember reviewing the emails between her and Sleep Number's counsel. (Dkt. 336 at 38-40.) There are also assertions that Bloomquist's e-mails to her counsel refreshed her recollection about the events in the present case. (*Id.*) In other words, it is not clear based on the testimony relied on by Defendants that Bloomquist relied on these emails for her testimony or that the emails otherwise affected her testimony. *See Suss v. MSX Intern. Engineering Services, Inc.*, 212 F.R.D. 159, 165 (S.D.N.Y. 2002) (merely reviewing the documents was not sufficient; the witness must have relied on them); *see also Sheffield,* 55 F.3d at 343 (the Eighth Circuit held that "even where a witness reviewed a writing before or while testifying, if the witness did not rely on the writing to refresh memory, Rule 612 confers no rights on the adverse party") (citation and marks omitted); *K & S Assocs., Inc. v. American Ass'n of Physicists in Medicine*, No. 3:09–

1108, 2012 WL 4364087 at *4 (M.D. Tenn. 2012) (mere review not sufficient, must have relied upon or the documents must have affected testimony). This is especially important here, because the emails at issue were sent by Bloomquist about events she witnessed, and her knowledge cannot be presumed to come solely from the review of the documents. *See Ferry v. BJ's Wholesale Club*, No. CIV.3:06CV226-C, 2007 WL 75375, at *3 (W.D.N.C. Jan. 8, 2007) (finding that the interests of justice did not support waiver, as the witness's knowledge did not come solely from refresher documents, but from personal experience instead, including events which he actually witnessed). Here, Defendants have failed to cite any evidence establishing the requisite foundation to suggest that Bloomquist relied upon her review of the documents during her testimony, or that such review impacted her testimony sufficiently in order to require production of privileged communications.

Moreover, as stated in the advisory committee notes to Rule 612, "[t]he purpose of the phrase 'for the purpose of testifying' is to safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure that access is limited only to those writings which may fairly be said in fact to have an impact upon the testimony of the witness." Fed. R. Evid. 612, advisory committee notes (1972). Indeed, it is clear from the crux of Defendants' arguments that they are engaging in a fishing expedition into privileged communications based on their assertion that they "likely contain important information" about the substance and timing of communications about

8

trade secrets between the parties.[2]  Similarly, at the hearing, Defendants' counsel represented it was not seeking the entire five-inch stack of documents reviewed by Bloomquist, but rather only the narrow subset of her e-mails with counsel, which supports a finding that Defendants are trying to explore an opposing party's privileged communications and are attempting to use Rule 612 as a discovery tool in order to contradict Sleep Number's version of events.  However, as stated previously, the Eighth Circuit has found that "Rule 612 is not a vehicle for a plenary search for contradictory or rebutting evidence."  *Sheffield*, 55 F.3d at 343.

Based on the above, and the admonishment by the advisory committee that "nothing" in Rule 612 should "be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory"[3]  Fed. R. Evid. 612,

---

[2]   The Court notes that while Defendants profess a need for the emails at issue because Bloomquist could not recall details during her deposition of what she would have conveyed to counsel, there is no evidence of her inability to testify about the relevant events, and the citation provided by Defendants for this proposition in their memorandum contains no evidence of any inability on the part of Bloomquist to testify about the substantive events, only as to her lack of recall as to whether she remembered reviewing any particular document.  (Dkt. 333 at 8 (citing Dkt. 336 at 40).)  At the hearing, Defendants for the first time also pointed to pages 183-184 of the transcript, where Bloomquist had difficulty recalling specific details of an October 2018 meeting.  (Dkt. 366 at 182-184.)  However, the purpose of Rule 612 is to give an adverse party certain options when a witness uses a writing to refresh memory, and it is clear from this testimony that Bloomquist did not recall details about the meeting. Thus, Defendants would not be entitled to this email under Rule 612 because Bloomquist's memory was not refreshed.  Further, Defendants did not follow up during the deposition to see if any of the emails at issue would refresh Bloomquist's recollection as to the October 2018 meeting.

[3]   Defendants also appear to argue that Bloomquist's emails to counsel are not privileged.  However, Rule 612 is not a rule of discovery, *see Napolitano*, 2009 WL 1740826, at *3 (citation omitted), and regardless, for the reasons stated below (*see infra*,

9

advisory committee note (1974)), the Court denies Defendants' Motion to Compel. *See also Vuz v. DCSS III, Inc.*, No. 20-CV-0246-GPC-AGS, 2022 WL 542883, at *2 (S.D. Cal. Feb. 23, 2022).

## II.     DEFENDANTS' MOTION TO COMPEL (DKT. 347)

In their second Motion to Compel, Defendants seek an order requiring Sleep Number to re-produce any documents or communications from its redaction logs that contained improperly redacted information, and make the appropriate custodians or witnesses available to Defendants for a second deposition for cross-examination of these re-produced documents. (Dkt. 347; Dkt. 353.)

### A.     Procedural Background

The deadline for fact discovery in this matter expired on December 15, 2021. (Dkt. 246.)

As stated previously, Defendants deposed Bloomquist on December 20, 2020. When questioned about a redacted presentation that contained intellectual property, Bloomquist testified that Young would have seen the redacted portions, and that he had provided input into the presentation. (Dkt. 350-1 at 62-63.) When asked about the contents of the presentation, Sleep Number's counsel objected on the basis that portions of the presentation were redacted. (*Id.* at 64.) Defendants asked for an unredacted copy of the presentation. (*Id.* at 65.) In addition, Bloomquist had difficulty testifying about an

---

Section II.C), the Court finds that Bloomquist's emails containing notes of her meetings with Young and Hewitt were made in confidence to the attorney for purposes of obtaining legal advice for Sleep Number, and therefore are privileged communications.

10

email string dated November 29, 2017 (Dkt. 350-2 at 2) because of redactions. (Dkt. 350-1 at 206.)

After the deposition, Sleep Number agreed to produce unredacted copies of the three redacted exhibits introduced during Bloomquist's deposition and did produce them on December 23, 2021. (Dkt. 350 ¶¶ 3-9; Dkt. 366 ¶ 3; Dkt. 366-1 at 1.) Based on their review of the unredacted documents, on December 30, 2021, Defendants' counsel demanded confirmation from Sleep Number that it "would unredact and produce documents from its production that suffer from the same improper redaction strategy." (Dkt. 366-1 at 3.) On December 30, 2021, Defendants sought permission from the Court to bring the present Motion to Compel, which was granted. (Dkt. 366-2.)

On January 4, 2022, Sleep Number's counsel re-produced seven unredacted emails that had previously been produced redacted, and confirmed based on their review that the other redacted statements in these and the rest of Bloomquist's emails with human resources representatives were properly redacted and logged, as they reflected specific statements/advice of in-house counsel. (Dkt. 366 ¶ 6; Dkt. 366-3 at 2.)

The present Motion to Compel was filed on January 13, 2022.

On January 14, 2022, Sleep Number produced four additional documents with fewer redactions. (Dkt. 366 ¶ 6.)

On January 19, 2022, Sleep Number's counsel sent an email to Defendants' counsel that they had "re-reviewed any documents logged on our redaction logs that do not contain lawyers (i.e. both emails and presentations)" and that based on that review, they were producing unredacted versions of 18 emails. (Dkt. 366 ¶ 7; Dkt. 366-4 at 2.)

11

Sleep Number's counsel also communicated to Defendants that "[a]s for the remainder of the documents, including all of the presentations, I believe the redactions are proper and we will need to oppose the motion." (Dkt. 366 ¶ 8; Dkt. 366-4 at 2.)

**B.     Legal Standard**

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

In general, confidential communications between individuals and attorneys for the purpose of obtaining or rendering legal advice are privileged. *See Upjohn v. United States*, 449 U.S. 383, 394-95 (1981); *see also United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977) (The attorney-client privilege is "the long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client."). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. It is important to emphasize the attorney-client privilege applies only to confidential communications made to facilitate legal services,

and does not apply where a lawyer acts as a scrivener or business advisor. *See Horvath*, 731 F.2d at 561 (citations omitted); *see also United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012) (citation omitted) ("[W]hen an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply."); *Diversified*, 572 F.2d at 602 ("A communication is not privileged simply because it is made by or to a person who happens to be a lawyer.") (citations omitted). "The party asserting the attorney-client privilege . . . bears the burden to provide a factual basis for its assertions." *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 528 (D. Minn. 2002) (citing *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985)); *see also In re Grand Jury Proceedings*, 791 F.2d 663, 666 (8th Cir. 1986). The privilege belongs to Sleep Number, even to the extent that Defendants Young and Hewitt previously reviewed the documents in their role as Sleep Number employees or consultants. *See United States v. Adams*, No. 017CR00064DWFKMM, 2018 WL 5311410, at *8 (D. Minn. Oct. 27, 2018), *aff'd*, No. CR 17-64 (DWF/KMM), 2018 WL 6446387 (D. Minn. Dec. 10, 2018) ("Because corporations can only act through agents, courts have held that any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee."); *see also Diversified*, 572 F.2d at 611 n.5 ("Ordinarily, the privilege belongs to the corporation and an employee cannot himself claim the attorney-client privilege and prevent disclosure of the communications between himself and the corporation's counsel if the corporation has waived the privilege."); *Citibank, N.A. v. Andros*, 666 F.2d 1192, 1195 (8th Cir. 1981) ("[T]he right to decide whether to waive a corporation/s attorney-client privilege belongs

to management.").

### III.    ANALYSIS

Defendants argue that Bloomquist's deposition and the subsequent production of unredacted documents demonstrates that Sleep Number has used the attorney-client privilege in order to conceal purely business and technical information under the guise of a privilege, and on this basis it should be required to identify each instance in which it improperly withheld relevant business communications or facts, including presentations under the guise of the attorney-client privilege or work product doctrine, and then produce all such communications. (Dkt. 348 at 5-7.) In addition, Defendants complain that Sleep Number's redaction and privilege logs contain hundreds of entries, many of which do not list attorneys as either the sender or a recipient, and Defendants are unable to determine whether Sleep Number's privilege grounds are legitimate or, instead, whether it has improperly concealed nonprivileged or factual information. (*Id.* at 7.) Based on the most recent production of previously redacted documents, Defendants ask that the Court compel Sleep Number to review and re-produce any improperly redacted documents. (*Id.*) Defendants also ask that they be allowed to reopen depositions with respect to documents that now have been re-produced without redactions or with fewer redactions. (Dkt. 347; Dkt. 353.)

At the hearing, after repeated questions by the Court as to the scope of the relief that Defendants were seeking (given the breadth of the relief requested at the hearing and the fact that part of the relief requested at the hearing was outside of the scope of their motion), Defendants represented to the Court that they were asking for an order directing

14

Sleep Number's counsel to go through the redacted documents again and ensure that they are properly redacted consistent with the law and directing Sleep Number's counsel to go through written communications between Bloomquist and Sleep Number's counsel sent shortly after key meetings involving Bloomquist, Young, and Hewitt around November 2017, March and April 2018, and October 2018 to determine if they were properly withheld.

With respect to the redacted presentations, Defendants point to Docket Entries 350-4 and 350-5, a presentation that had six redacted slides, which was ultimately produced in an unredacted format. A review of these previously redacted slides shows a list of the competitive landscape, status of patent issuance, and status of pending litigation, which are not privileged. Defendants use this presentation to argue that all presentations should be unredacted, including the example at Docket Entry 350-18, which is a slide show on product innovation containing four redacted slides out of approximately 32 slides. (Dkt. 350-1 at 29-32.) Sleep Number's counsel asserts that it has re-reviewed these documents for privilege, and asserts the following regarding the presentation at Docket Entry 350-18:

> The presentation contains largely non-privileged information—which was produced without redaction to Defendants—but also contains a small number of slides that were prepared by or in conjunction with an attorney (i.e. in-house and patent counsel) and/or that reflect legal strategy. The same is true for other presentations on Sleep Number's redaction logs, which generally contain legal advice and strategy related to Sleep Number's patent prosecution activities. Sleep Number maintains that all of the redactions employed in the still-redacted documents on its redaction logs are proper.

(Dkt. 366 ¶ 8.) Given these representations, and the fact that Sleep Number has taken it

15

upon itself to review the presentations and at least with respect to one presentation, reproduced it in an unredacted version, the Court will not require Sleep Number to produce unredacted versions of the other presentations and documents at this time. Similarly, the voluntary production of some documents previously withheld as privileged is not in and of itself a basis for re-production or re-review of all documents on a 24-page redaction log (Dkt. 350-19), or for that matter a review of all documents withheld in their entirety on privilege grounds.

The Court also rejects Defendants' assertion that a communication cannot be privileged where there are no attorneys listed on the communication. Courts within the Eighth Circuit generally recognize that, even where counsel is not directly involved, the privilege may nevertheless attach to certain intracorporate communications. *See, e.g.*, *Diversified*, 572 F.2d at 609 (concluded that a privileged communication in the corporate context does not lose its privileged status if it "is not disseminated beyond those persons who, because of the corporate structure, need to know its contents"); *Hudock v. LG Elecs. U.S.A., Inc.,* No. 0:16-CV-1220-JRT-KMM, 2019 WL 5692290, at *6 (D. Minn. Nov. 4, 2019) (finding that the defendants' redactions of emails between two non-attorneys were appropriate because "[t]he communication involves the transmission or relaying of legal advice among corporate employees and their functional equivalents who are responsible for the subject matter at issue"); *Safco Prod. Co. v. Welcom Prod., Inc.*, No. CV 08-4918 (JRT/JJG), 2010 WL 11252007, at *2 (D. Minn. Feb. 10, 2010) ("Though this standard contemplates that subordinates are communicating to their superiors so the corporation can obtain legal advice, similar principles apply to

the dissemination of legal advice. Thus, corporate officers may communicate privileged matters to lower-level employees, without losing the privilege, so long as the communication is limited to those who act upon the legal advice.") (citations omitted); *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, No. CV 06-4112 (ADM/JSM), 2009 WL 10677479, at *21 (D. Minn. Mar. 23, 2009) ("Similarly, other courts have concluded that corporate privileged communications retain their privileged status within a corporation if an employee conveys legal advice received from counsel to other employees or officers of the corporation on a 'need to know basis.'"), *on reconsideration in part on other grounds*, 2009 WL 10677709 (D. Minn. Sept. 4, 2009). Therefore, the Court will not require Sleep Number to re-review such documents solely on this basis.

Moreover, the Court will not require Sleep Number's counsel to go through the redacted documents again to ensure that they are properly redacted consistent with the law, since Sleep Number's counsel, as an officer of the Court, represented to the Court they have already gone back and reviewed the redaction log materials for privilege multiple times. The Court sees no basis to require an exercise in futility given these representations. Further, to the extent that Defendants seek to have this Court review the documents on redaction and privilege logs, the Court will not expend public resources on such an endeavor based on speculation that because Sleep Number has re-produced a few documents that were previously redacted, all the documents are suspect. *See Ackerman v. PNC Bank, Nat. Ass'n*, No. CIV. 12-42 SRN/JSM, 2013 WL 9596080, at *15 (D. Minn. Apr. 10, 2013) ("Ackerman's motion is denied as to her request for an in camera inspection of the documents on PNC's privilege log. Ackerman has presented no

evidence in support of such an inspection other than her speculation that the two log notes simply cannot reflect attorney-client communications and that "where there is smoke there is fire.").

As to the emails Bloomquist sent to Sleep Number's counsel after her meetings with Young and Hewitt, Bloomquist asserted in her declaration that while Young and Hewitt were consultants at Sleep Number and even after their consultancy ended, she had various meetings with them, and that after some of those meetings, she emailed with Sleep Number's in-house lawyers for the purpose of expressing her concerns about Young and Hewitt, to seek legal advice regarding her concerns, and to provide information so that in-house lawyers could provide legal advice to Sleep Number.  (Dkt. 368 ¶ 2.)  Defendants assert that they are at least entitled to these emails in an unredacted form because they contain factual information and that factual information is not privileged.  Indeed, "the [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *In re Bieter Co.*, 16 F.3d 929, 940-41 (8th Cir. 1994); *see also Upjohn*, 449 U.S. at 395-96; *see also PHL Variable Ins. Co. v. 2008 Christa Joseph Irrevocable Tr. Midas Life Settlements LLC*, No. 10 cv- 3001 (PJS/TNL), 2012 WL 12896244, at *3 (D. Minn. Sept. 21, 2012).  Based on Bloomquist's representation that she sent the emails for purposes of obtaining legal advice for Sleep Number, Defendants are not entitled to the emails themselves regardless of their content.  On the other hand, the privilege does not protect factual information even if it is contained in privileged communications.  But nothing prevented Defendants from inquiring into the

facts of the meetings during Bloomquist's deposition, and while Defendants complain that Bloomquist's memory as to the October 2018 meeting was poor, there is no record of Defendants attempting to refresh Bloomquist's recollection using any documents or even asking if there were any documents that would refresh her recollection. Further, Defendants cited no authority for the proposition that a witness's poor memory constitutes a basis for requiring the production of attorney-client privileged documents.

For these reasons, the Court will not order the review of Bloomquist's emails to Sleep Number's in-house counsel.

While the Court declines to order any further production or review of documents, the Court will give Defendants the opportunity to reopen depositions for the sole purposes of addressing previously redacted documents that have now been produced in an unredacted format or with fewer redactions. The parties shall meet and confer to attempt to come to an agreement as to the deponents and amount of time needed. The parties shall promptly notify the Court of any agreement, and if there is no agreement, the parties shall submit their positions in separate letters, not to exceed three pages in length, to be filed with the Court. The parties shall file this letter no later than fifteen days from the issuance of this Order, unless an objection to the Order is filed.

### III. ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendants' Motion to Compel (Dkt. 326) is **DENIED**.

2. Defendants' Motion to Compel (Dkt. 347) is **GRANTED** only to the extent that Defendants may reopen depositions consistent with this Order, and is otherwise

19

**DENIED**.

Dated: March 28, 2022                               *s/Elizabeth Cowan Wright*
                                                    ELIZABETH COWAN WRIGHT
                                                    United States Magistrate Judge